UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

15-20429-CR-ALTONAGA/O'SULLIVAN

18 U.S.C. § 1349
18 U.S.C. § 982

Jun 11, 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. – MIAMI

UNITED STATES OF AMERICA

vs.

YOVANI SUAREZ,

        Defendant.

_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

#### The Medicare Program

1. The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a Federal health care program, as defined by Title 42, United States Code, Section 1320a-7b(f).

-2-

3. Medicare programs covering different types of benefits were separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

4. CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different private companies to administer the Medicare Part A program throughout different parts of the United States. In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto"). As administrator, Palmetto was to receive, adjudicate and pay claims submitted by HHA providers under the Part A program for home health claims. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data. CMS first contracted with TriCenturion, a Program Safeguard Contractor. Subsequently, on December 15, 2008, CMS contracted with SafeGuard Services, a Zone Program Integrity Contractor. Both TriCenturion and SafeGuard Services safeguarded the Medicare Trust Fund by reviewing HHA providers' claims for potential fraud, waste, and/or abuse.

5. Physicians, clinics and other health care providers, including HHAs, that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the services that were performed for the beneficiary, the date that the services were provided, the cost of the services, and the name and provider number of the physician or other health care provider who ordered the services.

## Part A Coverage and Regulations

### Reimbursements

6. The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits. A patient qualified for home health benefits only if the patient:

(a) was confined to the home, also referred to as homebound;

(b) was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("P.O.C."); and

(c) the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; that the beneficiary was confined to the home; that a POC for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the P.O.C.

### Record Keeping Requirements

7. Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of patients to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

8. Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare were a: (i) P.O.C. that included the physician order, diagnoses, types of services/frequency of visits, prognosis/rehab potential,

functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals, and the physician's signature; and (ii) a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

9. Medicare Part A regulations required provider HHAs to maintain medical records of every visit made by a nurse, therapist, and home health aide to a beneficiary. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any instruction provided to the patient and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home health nurse, therapist, and aide were required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "clinical notes" and "home health aide notes/observations."

10. Medicare regulations allowed Medicare certified HHAs to subcontract home health care services to nursing companies, therapy staffing services agencies, registries, or groups (nursing groups), which would bill the certified home health agency. The Medicare certified HHA would, in turn, bill Medicare for all services rendered to the patient. The HHA's professional supervision over subcontracted-for services required the same quality controls and supervision as of its own salaried employees.

11. Medicare paid for insulin injections by an HHA when a beneficiary was determined to be unable to inject his/her own insulin and the beneficiary had no available caregiver able or willing to inject the beneficiary. The basic requirement that the beneficiary be confined to the

home or be homebound was a continuing requirement for a Medicare beneficiary to receive home health benefits.

### The Defendant and Related Companies

12. Rodriguez Finish Concrete Inc. ("Rodriguez Concrete") was a limited liability corporation organized under the laws of the State of Florida, which purportedly did business at 7125 SW 134th Court, Miami Florida 33183.

13. Y & A Property Investment, Inc. ("Y & A Property") was a limited liability corporation organized under the laws of the State of Florida, which also purportedly did business at 7125 SW 134th Court, Miami Florida 33183.

14. Defendant **YOVANI SUAREZ**, a resident of Miami-Dade County, was the president and registered agent of Rodriguez Concrete and Y & A Property.

### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

From in or around at least April 2013 through in or around at least August 2014, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### YOVANI SUAREZ,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly, combine, conspire, confederate, and agree with others known and unknown to the United States Attorney, to commit certain offenses against the United States, that is:

a. to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health

care benefits, items, and services, in violation of Title 18, United States Code, 1347; and

b. to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

15. It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; and (b) concealing the submission of false and fraudulent claims to Medicare.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

16. **YOVANI SUAREZ** and his co-conspirators paid and caused the payment of kickbacks to Medicare beneficiaries who agreed to serve as patients at various Miami-Dade home health agencies that submitted false and fraudulent claims for home health services that were not medically necessary and not provided to Medicare beneficiaries.

17. **YOVANI SUAREZ** and his co-conspirator patient recruiters purchased home health therapy prescriptions for home health services that were not medically necessary from co-conspirators at Miami-Dade medical clinics.

18. **YOVANI SUAREZ** and his co-conspirators caused several Miami-Dade County home health agencies to submit false and fraudulent claims to Medicare using interstate wire communications, seeking payment for home health services purportedly provided to beneficiaries when, in fact, such services were not provided and not medically necessary.

19. As a result of such false and fraudulent claims, **YOVANI SUAREZ** and his co-conspirators caused Medicare to make payments to several Miami-Dade County home health agencies.

20. **YOVANI SUAREZ** and his co-conspirators diverted the fraud proceeds for the personal use and benefit of themselves and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

1. The allegations of this Information are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which the defendant, **YOVANI SUAREZ**, has an interest.

2. Upon conviction of any violation alleged in this Information, the defendant shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation pursuant to Title 18, United States Code, Section 982(a)(7).

3. The property which is subject to forfeiture includes, but is not limited to, the following: A sum of money equal in value to the property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the violations alleged in this Information, which the United States of America will seek as a forfeiture money judgment, jointly and severally, against the defendants as part of their respective sentence.

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set forth in Title 21, United States Code, Section 853.

_____, Chief, Crim. Div.
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
GEJAA GOBENA
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
ANNE P. MCNAMARA
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

YOVANI SUAREZ,

               **Defendant.**
_____/

CASE NO. _____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)

   X   Miami      ____ Key West
  ____  FTL         ____ WPB    ____ FTP

New Defendant(s)    Yes ____   No ____
Number of New Defendants  ____
Total number of counts  ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    Yes
   List language and/or dialect   Spanish

4. This case will take   0   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                               (Check only one)

  I     0 to 5 days        X        Petty        ____
  II    6 to 10 days    ____      Minor        ____
  II    11 to 20 days   ____      Misdem.    ____
  IV   21 to 60 days   ____      Felony      X
  V:    61 days and over  ____

6. Has this case been previously filed in this District Court?  (Yes or No)   No
  If yes:
  Judge: _____   Case No. _____
  (Attach copy of dispositive order)
  Has a complaint been filed in this matter?  (Yes or No)   No
  If yes:
  Magistrate Case No.  _____
  Related Miscellaneous numbers:  _____
  Defendant(s) in federal custody as of  _____
  Defendant(s) in state custody as of  _____
  Rule 20 from the _____ District of _____

Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?   ____ Yes   X  No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?   ____ Yes   X  No

                                              _____
                                              ANNE P. McNAMARA
                                              DOJ TRIAL ATTORNEY
                                              Court No. A5501847

*Penalty Sheet(s) attached                                                                                   REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   **YOVANI SUAREZ**

**Case No:** _____

Count #:   1

18 U.S.C. § 1349

Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty**:   Twenty (20) years' imprisonment

Count #:

\*Max Penalty:

Count #:

\*Max Penalty:

Count #:

\*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
для
Southern District of Florida

| United States of America | ) | |
| :---: | :---: | :--- |
| v. | ) | Case No. |
| | ) | |
| Yovani Suarez, | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*